UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KRISTIN FISHER,

                              Plaintiff,

v.

                                                   Civ. No.: 14-CV-913S(F)

CONAX TECHNOLOGIES LLC

                              Defendant.

## AMENDED COMPLAINT

Plaintiff KRISTIN FISHER, by and through her attorneys, Webster Szanyi LLP, as and for her Amended Complaint against Defendant alleges as follows:

### Introduction

1. Ms. Fisher was hired by Defendant Conax Technologies LLC ("Conax") in April 2012. She worked there without any issue for more than one year, until June 2013, when she was sexually harassed at work and reported the incident to Conax. Conax failed to adequately address her complaint. Instead, Conax began to take action against her. When it became apparent that she was being discriminated against, Ms. Fisher proceeded to file complaints with the Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR") based on the discriminatory and retaliatory treatment to which she was being subjected. As a result of her complaints Ms. Fisher was harassed, unfairly disciplined and ultimately terminated. Notably, Ms. Fisher was subject to no adverse action of any kind prior to filing her internal complaint, and she was never disciplined until after Conax received her first EEOC Charge. Ms. Fisher was treated far less favorably than all

similarly situated coworkers who had not filed harassment, discrimination or retaliation complaints. The manner in which Ms. Fisher was treated by Conax was discriminatory and retaliatory, and was based on her sex, disability and prior complaints.

**Parties, Jurisdiction and Venue**

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL").

3. The Court has jurisdiction over this matter as it involves federal questions based upon Ms. Fisher's claims under Title VII and the ADA.

4. The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367.

5. Venue properly lies within this District Court because Ms. Fisher was employed by Conax in Erie County, New York, and because her causes of action arose in Erie County.

6. Ms. Fisher has resided in Erie County at all relevant times.

7. Upon information and belief, Defendant Conax is a domestic limited liability company with a business address at 2300 Walden Avenue, Buffalo, New York 14225.

8. Upon information and belief, Conax has employed more than one hundred individuals in each of the past five years.

9. Conax is an "employer" as defined by Title VII, the ADA and the NYSHRL.

10. Upon information and belief, Carl Resetarits was employed by Conax as Assembly Supervisor at all times relevant hereto.

11. Upon information and belief, John Driscoll was employed by Conax as an Assembler at all times relevant hereto.

12. Upon information and belief, Sue Blazynski was employed by Conax as its Human Resources Administrator at all times relevant hereto.

13. Upon information and belief, Gary Barnhard was employed by Conax as Director of Manufacturing at all times relevant hereto.

14. At all times relevant hereto Conax was vicariously liable for the actions of Mr. Resetarits, Mr. Driscoll, Ms. Blazynski and Mr. Barnhard.

15. Ms. Fisher filed timely charges of discrimination with the EEOC and brings this action within ninety (90) days of her receipt of right to sue letters from the EEOC in connection with each charge that she filed.

## Operative Facts

16. Ms. Fisher is a female.

17. Ms. Fisher was hired by Conax on April 2, 2012, as an Assembler B. She remained employed in that position throughout her employment with Conax.

18. During the course of her employment, Ms. Fisher was supervised by Mr. Resetarits, Mr. Barnhard and Ms. Blazynski.

19. Mr. Resetarits served as Ms. Fisher's direct supervisor during her employment.

20. Mr. Resetarits regularly harassed Ms. Fisher at work, including but not limited to yelling at her, following her to the womens' bathroom, questioning her and others as to whom Ms. Fisher was dating, and referring to her as "such a dramatic girl" when she reported his harassing behavior.

21. On June 3, 2013, Ms. Fisher reported to work with a migraine headache. Mr. Driscoll approached her several times saying that she should lie down in the First Aid room. During one of those conversations, Mr. Driscoll stared directly at Ms. Fisher's chest and stated, "I'm sorry, I can't stop looking at them girls."

22. Ultimately, Mr. Resatarits directed Ms. Fisher to rest in the First Aid room and she complied. Ms. Fisher fell asleep in the First Aid room.

23. Ms. Fisher awoke to Mr. Driscoll inside the First Aid room with her, rubbing her leg, upper thigh and waist, and asking Ms. Fisher to remove her shirt and to let him massage her chest. Mr. Driscoll said, "why don't you unzip your shirt and let them girls out." Ms. Fisher declined his advances and, eventually, Mr. Driscoll left the room.

24. Throughout the rest of the day Mr. Driscoll continued to stare at Ms. Fisher and make comments to her about removing her shirt. Ms. Fisher requested and obtained permission to leave work early as a result of Mr. Driscoll's conduct.

25. The next day, on June 4, 2013, Ms. Fisher reported Mr. Driscoll and his unwanted sexual advances to Conax's Human Resources Department. In response

to her complaint, Ms. Blazynski told Ms. Fisher that she is "too sensitive" and suggested that Ms. Fisher misinterpreted Mr. Driscoll's actions due to her migraine.

26. In the end, Ms. Fisher was punished for reporting the sexual harassment.

27. Ms. Blazynski directed Ms. Fisher and Mr. Driscoll to sign a sexual harassment policy. No further action was taken to address Ms. Fisher's concerns at that time. Ms. Fisher advised Ms. Blazynski that she did not feel her complaint was adequately addressed.

28. Prior to forcing Ms. Fisher to sign a sexual harassment policy, Conax had neither adopted nor distributed any such policy to its employees.

29. Subsequently, on or about July 24, 2013, Ms. Fisher was transferred from her assignment in the Constellation Cell to the Glands Assembly Cell, allegedly in an attempt to separate her from Mr. Driscoll.

30. Ms. Fisher preferred to stay in the Constellation Cell and objected to Conax moving her, as opposed to Mr. Driscoll.

31. As a result of the transfer, Ms. Fisher was assigned to work directly alongside Michael D'Auria, a co-worker against whom several female employees have filed harassment complaints.

32. Ms. Fisher complained to Conax regarding Mr. Deoria's harassing behavior and no corrective action was taken.

33. As a result of her transfer to the Glands Cell, Ms. Fisher was deprived of promotional and overtime opportunities that would have been available to her in the Constellation Cell.

34. Mr. Driscoll regularly visited the Glands Cell and made physical contact with Ms. Fisher while he was there. Ms. Fisher complained about his presence.

35. In response to her complaints, Conax placed specific restrictions on Ms. Fisher within the workplace. Ms. Fisher was directed to stay in the Glands Cell only, and to enter and exit the building through one door. No similar restrictions were placed on Mr. Driscoll.

36. In January 2014, Ms. Fisher complained to Human Resources regarding Mr. Resatarits' ongoing harassment toward her.

37. In a meeting to discuss that complaint on January 24, 2014, Ms. Fisher was referred to as "a complainer" and her harassment allegations were ignored. Instead, Ms. Blazynski, Mr. Bernhard and/or Mr. Resatarits made statements to Ms. Fisher that she is "too sensitive," that Mr. Resatarits "just picks on [her], it's not harassment," and that Ms. Fisher just "bitches about things."

38. At the conclusion of the January 24, 2014 meeting, Ms. Fisher was directed to provide a medical note with regard to her use of the bathroom at work.

39. Ms. Fisher filed her first EEOC Charge (Charge No. 846-2013-45099) on or about February 26, 2014. Prior to filing that EEOC Charge, Ms. Fisher had received no discipline or written warnings of any kind in connection with her employment.

40. On April 29, 2014, shortly after Conax received notice of Ms. Fisher's EEOC Charge, Ms. Fisher was disciplined for allegedly sexually harassing a male coworker. The subject male coworker initiated no complaint with Human Resources regarding the alleged incident.

41. In June 2014, Ms. Fisher was reassigned to the Quartz Cell, an assignment that all other employees had refused.

42. On June 24, 2014, Ms. Fisher filed an incident report against a co-worker for calling her a "bitch, slut, whore and cunt." Conax took no action in response to her complaint.

43. On June 27, 2014, Ms. Fisher complained to Human Resources that a co-worker was stalking her online. Conax took no action in response to her complaint.

44. In July 2014, Conax issued a written warning to Ms. Fisher for entering the maintenance area, allegedly in violation of the restrictions Conax placed on Ms. Fisher.

45. In July 2014, Conax refused to reimburse Ms. Fisher for shoes that she had purchased, and for which she was entitled to reimbursement pursuant to the collective bargaining agreement that governed her employment, as well as pursuant to Conax's practice of issuing reimbursement for shoes of a same or similar type to other employees.

46. Meanwhile, from May 2, 2014 through June 12, 2014, Conax granted Ms. Fisher an unpaid leave of absence. Conax advised Ms. Fisher to apply for New York State Disability in connection with the leave.

47. Following her return to work, Conax demanded Ms. Fisher execute authorizations allowing Conax to obtain her medical records.

48. On July 25, 2014, Ms. Fisher was suspended indefinitely for refusing to provide the requested medical authorizations.

49. Ms. Fisher's disability application was approved on or about September 11, 2014. Conax refused to allow Plaintiff to return to work at that time.

50. Ms. Fisher grieved the suspension. Ultimately, she filed a complaint against Conax with the National Labor Relations Board ("NLRB") in connection with her suspension.

51. On or about October 3, 2014, nearly three months after she was suspended on July 25, 2014, Conax agreed to resolve Ms. Fisher's grievance and NLRB complaint. Conax agreed to rescind the entire suspension, return her to work, and issue full back pay from July 26, 2014 through October 3, 2014, on the condition that Ms. Fisher agree to a last change agreement ("LCA").

52. The LCA was based on alleged violations of plant rules that occurred in July 2014, none of which were addressed with Ms. Fisher prior to the LCA being presented to her. The LCA imposed a three-day suspension without pay, returning Ms. Fisher to work on October 9, 2014.

53. Ms. Fisher was forced to sign the LCA in order to return to work and recover back pay in the gross amount of $6,368.00, or else remain suspended without pay until her NLRB complaint was resolved. Ms. Fisher requested additional time to review the LCA and her request was denied. She ultimately signed the LCA in order to recover her back pay and be reinstated.

54. Conax did not follow its progressive discipline process with regard to its discipline of Ms. Fisher.

55. On or about October 17, 2014, Mr. Bernhardt advised Ms. Fisher that it is a violation of her LCA to accuse her co-workers of any wrongdoing.

56. On October 27, 2014, Ms. Fisher filed her first federal lawsuit (Civ. No. 14-CV-913) against Conax with the District Court for the Western District of New York.

57. On two separate occasions in November 2014, a coworker initiated a confrontation with Ms. Fisher in an attempt to harass and intimidate her. Ms. Fisher attempted to file a complaint but Human Resources refused to provide her an incident report.

58. On December 9, 2014, Mr. Bernhardt returned or reissued an inspection stamp to Ms. Fisher. Ms. Fisher's inspection stamp had been revoked in connection with the LCA.

59. Notwithstanding the receipt of her inspection stamp, Conax continued to deny Ms. Fisher the same or similar overtime opportunities that were offered to all other employees, as required by the collective bargaining agreement that governed Ms. Fisher's employment.

60. On or about December 10, 2014, Ms. Fisher filed a complaint against Conax with the New York State Division of Human Rights ("NYSDHR"), Case No. 10172415.

61. On December 12, 2014, Ms. Fisher attempted to report a complaint against a coworker and Human Resources again refused to provide her an incident report. Human Resources permitted the coworker to file an incident report against Ms. Fisher, and Ms. Fisher was disciplined in connection with the incident. Ms. Fisher was suspended for three days without pay. The other involved coworker received a written warning, which is not considered disciplinary.

62. On or about December 29, 2014, Ms. Fisher filed her second complaint against Conax with the NYSDHR, Case No. 10172784.

63. On or about January 6, 2015, Conax again refused to reimburse Ms. Fisher for shoes that she had purchased, and for which she was entitled to reimbursement pursuant to the collective bargaining agreement that governed her employment, as well as pursuant to Conax's practice of issuing reimbursement for shoes of a same or similar type to other employees.

64. On or about January 9, 2015, Ms. Fisher learned that she had received significantly less overtime than other Conax employees within her classification, in violation of the applicable collective bargaining agreement.

65. On or about January 13, 2015, Ms. Fisher filed her third complaint against Conax with the NYSDHR, Case No. 10173017.

66. In February 2015, Conax again refused to reimburse Ms. Fisher for shoes that she had purchased, and for which she was entitled to reimbursement pursuant to the collective bargaining agreement that governed her employment, as well as pursuant to Conax's practice of issuing reimbursement for shoes of a same or similar type to other employees.

67. On or about February 3, 2015, Human Resources again refused to provide an incident report to Ms. Fisher when she attempted to file a harassment complaint against a coworker. Ms. Fisher eventually obtained an incident report and filed a complaint, but only after she reported Human Resources' refusal to provide her with an incident report to her union. Thereafter, Human Resources failed to adequately investigate her complaint.

68. Starting on or around February 9, 2015, Ms. Fisher was regularly assigned to perform physically demanding tasks that were not generally assigned to other females in her classification.  Unlike her female coworkers, Ms. Fisher was not allowed to seek any assistance to perform those tasks, notwithstanding that it was unsafe for her to perform those tasks alone.

69. On or about February 23, 2015, Ms. Fisher filed her fourth complaint with the NYSDHR, Case No. 10173685.

70. In or around March 2015, the EEOC reopened Ms. Fisher's first EEOC Charge (Charge No. 846-2013-45099, reopened as Charge No. 525-2015-00014) for reconsideration.

71. On April 17, 2015, Ms. Fisher was injured while performing a physically demanding task that had been assigned specifically to her to complete.  On or about April 29, 2015, she was placed on light duty as a result of her injuries.

72. While on light duty, Ms. Fisher was assigned and forced to complete tasks that were beyond the scope of her medical restrictions.

73. On May 27, 2015, Ms. Blazynski told Ms. Fisher that if she needed "to remain on light duty than we'll have to re-think your employment situation here at Conax."  At the time, Ms. Fisher had been on light duty for less than one month.  Other Conax employees have been permitted to remain on light duty for much longer periods of time.

74. On May 29, 2015, Ms. Fisher was suspended indefinitely for a mistake she made on or around May 18, 2015, when she cut the wrong wire on a work

order. Conax provided no other reason for her suspension at that time. Notably, that work order was not in accordance with her light duty restrictions.

75. On or about June 3, 2015, Ms. Fisher filed her fifth complaint with the NYSDHR, Case No. 10175511.

76. On or around June 3, 2015, Ms. Fisher received a medical note stating that she was to continue on light duty status for two weeks, but with fewer restrictions.

77. On June 11, 2015, Ms. Fisher reported to work to attend a meeting with Ms. Blazynski and others. She provided the aforementioned medical note continuing her light duty status for two weeks.

78. At the conclusion of the meeting on June 11, 2015, Ms. Fisher was advised that she was being terminated for violating the LCA; specifically, that she allegedly exhibited careless workmanship on two prior occasions.

79. Ms. Fisher's union filed several grievances on her behalf in connection with the foregoing, and continues to pursue many of those grievances through the date of this Amended Complaint. The terms of the collective bargaining agreement were regularly interpreted against Ms. Fisher, unlike other employees subject to the same agreement.

80. Ms. Fisher was wrongfully blamed for errors in her work product that she did not cause or create. Ms. Fisher was disciplined more severely than coworkers who committed the same or similar errors. On several occasions, Conax failed to even notify Ms. Fisher of her alleged errors until weeks or months after she allegedly made the errors.

81. As a result of the foregoing, Ms. Fisher has suffered and continues to suffer economic damages, including but not limited to loss of past and future earnings, promotional opportunities, and bonuses, and loss of past and future employment benefits.

82. As a result of the foregoing, Ms. Fisher has also suffered and continues to suffer significant emotional distress, impairment and damage to her good name and reputation, severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses. In addition, Ms. Fisher has suffered from depression, anxiety, stress, sleeplessness and irritable bowel syndrome, each of which was caused or aggravated by Defendant's actions.

83. Defendant's conduct was outrageous, malicious and done with reckless indifference to Ms. Fisher's protected rights, and was intended to injure Ms. Fisher, entitling her to an award of punitive damages.

**As and For A First Cause of Action – Retaliation in Violation of Title VII**

84. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

85. Plaintiff is a member of a protected class under Title VII.

86. Plaintiff satisfactorily performed the duties required by the position in which she was employed throughout her employment with Conax.

87. On several occasions during her employment Plaintiff exercised rights protected by Title VII, including but not limited to filing an internal complaint of

sexual harassment with Conax directly as well as filing administrative complaints with the EEOC alleging sex discrimination and retaliation.

88. Prior to filing the aforementioned complaints, Plaintiff was subject to no disciplinary action.

89. As a result of engaging in activity protected by Title VII, Plaintiff was subject to several adverse employment actions, up to and including her termination.

90. As a result of engaging in activity protected by Title VII, Conax took several actions against Plaintiff that would dissuade a reasonable person from complaining of discrimination, up to and including her termination.

91. Plaintiff was treated less favorably than others similarly situated who had not engaged in activity protected by Title VII.

92. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this cause of action have been met.

### As and For A Second Cause of Action – Discrimination and Hostile Work Environment in Violation of Title VII

93. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

94. As stated previously, Plaintiff complained directly to Conax that she was sexually harassed and/or sexually assaulted in the workplace by a co-worker, Mr. Driscoll.

95. In response to her complaint, Conax failed to take appropriate action. Instead, Conax punished Plaintiff by transferring her to an undesirable

assignment and limiting her access to other areas of the workplace, while allowing Mr. Driscoll to freely enter and exit Plaintiff's limited work space.

96. Conax repeatedly failed or refused to address any of Plaintiff's subsequent harassment complaints during the course of her employment, including refusing to provide Plaintiff with incident reports to complain of the harassing conduct.

97. Conax was aware of the harassment to which Plaintiff was subjected by coworkers and supervisors and failed to take necessary corrective action.

98. Plaintiff's supervisors and coworkers harassed and discriminated against Plaintiff based on her sex.

99. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this cause of action have been met.

**As and For A Third Cause of Action – Discrimination in Violation of the ADA**

100. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

101. Plaintiff was disabled within the meaning of the ADA, was perceived as disabled and/or had a record of a disability, and was otherwise qualified to perform the duties of her position.

102. Prior to her termination, Plaintiff had medically-imposed restrictions and was on light duty status as a result of injuries she sustained at work, including injuries to her back, hips and/or legs.

103. Nonetheless, Plaintiff was specifically assigned to complete tasks that exceeded her restrictions, and was forced to complete those tasks with no assistance.

104. Plaintiff was denied reasonable accommodations insofar as her light duty restrictions were ignored or refused.

105. Plaintiff was subject to disciplinary action, up to and including her termination, because of her actual or perceived disability.

106. At the time of her termination, Plaintiff was limited to light duty as a result of her injuries.

107. Ms. Blazynski threatened Plaintiff's employment if her light duty status continued.

108. Conax terminated Plaintiff after receiving a doctor's note continuing her light duty status.

109. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this cause of action have been met.

**As and For A Fourth Cause of Action – Retaliation in Violation of the ADA**

110. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

111. Plaintiff exercised rights protected by the ADA during her employment with Conax, including filing an administrative complaint with the EEOC alleging disability discrimination.

112. Shortly thereafter, Conax terminated Plaintiff's employment.

113. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this cause of action have been met.

**As and For A Fifth Cause of Action – Retaliation (Sex) in Violation of NYSHRL**

114. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

115. Plaintiff engaged in activity protected by the NYSHRL, including filing complaints with Conax and the NYSDHR alleging sex discrimination.

116. Conax's actions and inaction, as set forth above, constitute retaliation that is proscribed by the NYSHRL.

117. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this cause of action have been met.

**As and For A Sixth Cause of Action – Retaliation (Disability) in Violation of NYSHRL**

118. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

119. Plaintiff engaged in activity protected by the NYSHRL, including filing complaints with the NYSDHR alleging disability discrimination.

120. Conax's actions and inaction, as set forth above, constitute retaliation that is proscribed by the NYSHRL.

121. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this cause of action have been met.

### As and For A Seventh Cause of Action – Sex Discrimination in Violation of NYSHRL

122. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

123. Conax's actions and inaction, as set forth herein, constitute discrimination based on sex, including but not limited to a sexually hostile work environment, that is proscribed by the New York State Human Rights Law.

124. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this suit have been met.

### As and For An Eighth Cause of Action – Disability Discrimination in Violation of NYSHRL

125. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

126. Conax's actions and inaction, as set forth herein, constitute discrimination based on disability that is proscribed by the New York State Human Rights Law.

127. All procedural requirements, administrative requirements, and statutory conditions precedent to bringing this suit have been met.

### Jury Demand

Plaintiff respectfully demands trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff Kristin Fisher demands judgment against Defendant Conax Technologies LLC as follows:

(a) Awarding Ms. Fisher judgment on each and every cause of action;

(b) Awarding Ms. Fisher past and future lost earnings, with interest; past and future lost benefits, with interest; and such other and additional compensatory damages as necessary to make Plaintiff whole, as determined by the jury;

(c) Awarding Ms. Fisher reasonable attorneys' fees, costs and expenses;

(d) Awarding Ms. Fisher punitive damages in an amount deemed by appropriate the jury; and

(e) Awarding Ms. Fisher such other and further relief as this Court deems just and proper.

DATED:     December 29, 2015

**WEBSTER SZANYI LLP**
Attorneys for Plaintiff

By:     *s/Ryan G. Smith*
            Susan M. McClaren
            Ryan G. Smith
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
smcclaren@websterszanyi.com
rsmith@websterszanyi.com